# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VERNON WHITE, B68536, ) | |
| ) | |
| Petitioner, ) | Case No. 17-cv-3752 |
| ) | |
| v. ) | Judge Robert M. Dow, Jr. |
| ) | |
| RANDY PFISTER, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Vernon White, a prisoner at the Stateville Correctional Center, brings this *pro se* habeas corpus petition [1] pursuant to 28 U.S.C. § 2254 challenging his 2011 convictions in the Circuit Court of Cook County for first degree murder and aggravated sexual assault. Petitioner asserts that: (1) his murder conviction violated the Due Process Clause of the Fourteenth Amendment because language specifying that the victim had been strangled "with a cord" was removed from the indictment mid-trial; (2) his murder conviction violated the Due Process Clause because the indictment did not charge Petitioner on an accountability theory; (3) trial counsel provided ineffective assistance of counsel by failing to raise the first due process issue, seeking a directed verdict on all charges, and failing to argue that petitioner was not the principal in the murder at directed verdict; and (4) that appellate counsel provided ineffective assistance by failing to raise all the previous claims. The Court denies the petition and declines to issue a certificate of appealability. Judgment will be entered in favor of Respondent and against Petitioner. Civil case terminated.

## I. Background

The following facts are drawn from the state court record, which Respondent has submitted in accordance with Rule 5(c) of the Rules Governing Section 2254 Cases. [See 9.] The state court findings of fact are presumed correct.[1]

### A. Trial and Direct Appeal

Petitioner was charged with first degree murder on an accountability theory and aggravated criminal assault in Cook County, Illinois. He elected to be tried by a jury.

At his trial, the State proved that on March 27, 1996, Petitioner and two other individuals stole about $100,000 from the home a drug dealer named Kenneth Williams, who had been kidnapped and held by a man named Dree Deton. Petitioner sexually assaulted William's wife, P.W., during the robbery of Williams' home. After Petitioner and his accomplices met up with Deton to divide the money, Deton told Petitioner that he had "handled" Williams, and Petitioner assisted him in disposing of Williams' body. Years later, a DNA match linked Petitioner to the sexual assault of P.W., and he was arrested.

At trial, the assistant chief medical examiner of Cook County testified that she had performed the autopsy of Williams on April 9, 1996. She opined that the cause of Williams' death was strangulation, which was significantly contributed to by a blunt force trauma to his head. She concluded that the manner of death was homicide. Chicago police lieutenant Anthony Wojcik also testified at trial that on November 16, 2007, he was a sergeant assigned to the cold case homicide unit. He explained that during his interview of Petitioner on that evening, Petitioner asked that the camera be turned off and provided a summary of the incident in question.

---

[1] The Court relies on the factual findings of the Illinois Appellate Court on Petitioner's direct appeal of his conviction, *Illinois v. White*, 2013 IL App (1st) 112924-U (Ill. App. Ct. Sept. 27, 2013).

Petitioner told Wojcik that on the date of the incident, he had received a call from Deton telling him that "he had a sting going on, that he had kidnapped the drug dealer and that he was holding that drug dealer." Deton told Petitioner to meet two other individuals and then to go to the drug dealer's house and steal the money that was hidden there. Petitioner met the two individuals, and they proceeded to the house as planned. When they arrived, Petitioner sexually assaulted Williams' restrained wife. Petitioner stated that they were in the house for about 30 minutes and found approximately $100,000. Petitioner and the two accomplices then returned to the safe house, met up Deton, and divided the money. At that point, Deton informed Petitioner that he had killed Williams, whose body Deton had left in the trunk of Williams' car, and asked Petitioner to go with him while he disposed of the car and body. Petitioner followed Deton in his own car to a side street on the north side of Chicago where Deton parked Williams' car and peeled the steering column to give the appearance that the car had been stolen. Deton then got into Petitioner's car, and they drove a few blocks away where Deton threw the car keys into a sewer. Petitioner later reiterated this story with an assistant state's attorney on camera, the recording of which was provided to the jury at trial.

After the State rested, the Court denied Petitioner's motion for a directed verdict on all counts. Petitioner then rested without presenting any evidence. Following deliberations, the jury retuned verdicts finding Petitioner guilty of first-degree murder and aggravated criminal sexual assault. The trial court then sentenced Petitioner to natural life on his murder conviction, and a consecutive term of 30 years' imprisonment for aggravated criminal assault. Petitioner appealed his convictions. The Illinois Appellate Court affirmed, holding, among other things, that: (1) the State had proved that Petitioner guilty of murder on an accountability theory beyond a reasonable doubt "[g]iven [Petitioner's] voluntary participation in the scheme to steal money from [ ]

3

Williams' house and [Petitioner's] knowledge that [Williams] had been kidnapped and was being held by [Deton]." *White*, 2013 IL App (1st) 112924-U, at ¶ 27. The Illinois Supreme Court denied Petitioner's petition for leave to appeal. *People v. White*, 3 N.E.3d 801 (Ill. 2014)

### B. Post-Conviction Proceedings[2]

In his state post-conviction proceedings, Petitioner sought relief on several grounds: (1) that the trial court violated due process by allowing the State to amend the indictment; (2) that the trial court violated due process by instructing the jury that Petitioner could be found guilty based on an accountability theory, and (3) that trial and appellate counsel provided ineffective assistance of counsel. [9-5, at 5.] The state trial court summarily denied Petitioner's request for postconviction relief. [*Id.* at 8.] On appeal from that decision, Plaintiff's appointed counsel moved to withdraw asserting that she could not locate a non-frivolous issue to raise. [*Id.*] The Illinois Appellate Court granted that motion and concluded that "an appeal in this case would be without arguable merit." *Illinois v. White*, 2016 IL App (1st) 143130-U, ¶ 5 (Ill. App. Ct. Aug. 19, 2016). The Illinois Supreme Court denied Petitioner's petition for leave to appeal on January 25, 2017. *People v. White*, 77 N.E.3d 85 (Ill. 2017). On May 18, 2017. Petitioner filed the instant habeas petition under 28 U.S.C. § 2254(d) raising the same issues.

## II. Legal Standards

### A. Habeas

"Because this case entails federal collateral review of a state conviction," it is governed by 28 U.S.C.§ 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996

---

[2] Pursuant to *Woods v. Schwartz*, the Court relies on the content of Petitioner's counsel's motion to withdraw before the Illinois Appellate Court to determine the basis for that court's summary affirmance of the stat trial court's denial of Petitioner's request for postconviction relief. See 589 F.3d 368, 376-77 (7th Cir. 2009) (relying on the grounds cited by appellate counsel in her motion to withdraw where the Illinois Appellate Court summarily affirmed the denial of post-conviction relief).

4

("AEDPA"). *Long v. Pfister*, 874 F.3d 544, 547 (7th Cir. 2017) (en banc). Under that statute, Petitioner is not entitled to relief "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "Unreasonable" as used in the statute means "something like lying well outside the boundaries of permissible differences of opinion." *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (internal quotation and citation omitted). Further, the state court's factual findings are "presumed to be correct," and the petitioner bears the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also *Toliver v. McCaughtry*, 539 F.3d 766, 772 (7th Cir. 2008).

### B. Ineffective Assistance of Counsel

In order to prevail on an ineffective assistance of counsel claim, Petitioner must show that his counsel's performance was deficient and that he was prejudiced by the deficiencies in counsel's performance. *Strickland v. Washington*, 466 U.S. 688, 687 (1984). Both components of the test must be satisfied and "the lack of either is fatal." *Eddmonds v. Peters*, 93 F.3d 1307, 1313 (7th Cir. 1996). The Court's review under *Strickland* is deferential and applying *Strickland* under the AEDPA (which itself also requires deference) results in a double level of deference to the state court determination. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009).

Under the first prong of the *Strickland* test, Petitioner must establish that "counsel's representation fell below an objective standard of reasonableness" when measured against "prevailing professional norms." *Strickland*, 466 U.S. at 688; see also *Gaylord v. United States*,

5

829 F.3d 500, 506 (7th Cir. 2016). A court must consider "all of the circumstances of [the] case" in determining whether counsel's acts or omissions "were made outside the wide range of professionally competent assistance." *Menzer v. United States*, 200 F.3d 1000, 1003 (7th Cir. 2000) (citing *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995)). "When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight." *United States v. Taglia*, 922 F.2d 413, 417-18 (7th Cir. 1991). A review of counsel's performance is "highly deferential," and a court's analysis must begin with a "strong presumption" that the defendant's attorney provided adequate representation to his client. *United States v. Meyer*, 234 F.3d 319, 324-25 (7th Cir. 2000) (internal quotation marks and citations omitted).

Under the prejudice prong, a petitioner must show that " 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; see also *Rastafari v. Anderson*, 278 F.3d 673, 688 (7th Cir. 2002). "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Strickland*, 466 U.S. at 694. Instead, "[c]ounsel's errors must have been 'so serious as to deprive the defendant of a fair trial.'" *Carter v. Butts*, 760 F.3d 631, 635 (7th Cir. 2014) (quoting *Strickland*, 466 U.S. at 693). "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' but the difference between *Strickland*'s prejudice standard and a more-probable-than-not standard is slight and matters 'only

in the rarest case.'" *Harrington v. Richter*, 562 U.S. 86, 111-12 (2011) (quoting *Strickland*, 466 U.S. at 693, 697).

**III. Analysis**

    **A. Due Process Claims**

Petitioner argues that his conviction must be overturned as a matter of law pursuant to the Fourteenth Amendment's Due Process Clause because (1) the language specifying that the victim has been strangled "with a cord" was removed from Petitioner's indictment mid-trial and (2) the indictment did not charge Petitioner as an accomplice. He also asserts that trial counsel was ineffective for failing to raise the first issue and appellate counsel was ineffective in failing to argue either issue.

As to Petitioner's first argument, the Seventh Circuit has held that an individual's conviction on an indictment or other charging document only violates due process if it fails to provide him with "adequate notice of the charges." *Bae v. Peters*, 950 F.2d 469, 478 (7th Cir. 1991). As the Seventh Circuit explained, "[s]o long as the defendant has received adequate notice of the charges against him so that he has a fair opportunity to defend himself, the constitutional requirement is met." *Id.* at 478. Here, Petitioner argues that standard was not met because mid-trial the government "materially amend[ed] the indictment by removing and[/]or striking 'with a cord'" from the murder charges in the indictment. [1, at 5.]. This argument fails.

Respondent correctly explains that the means of death is not an element of the offense of murder under Illinois law. See *People v. Coleman*, 276 N.E.2d 721, 724 (Ill. 1971) ("the means used to [commit the murder] * * * was not essential but was a formal part of the indictment which could be amended"). Because the means of death listed in the indictment was therefore superfluous, the state trial court did not violate due process by allowing the prosecution to strike

7

the challenged language during trial. The government was entitled to remove a possible point of confusion for the jury, which might have otherwise thought that they had to find that fact to return a conviction. In other words, Petitioner could not have been prejudiced in any way by the language's deletion, because the State was not required to prove the means of death. Regardless of the specific means used to kill Williams, Petitioner knew he was charged with Williams' murder and received sufficient details to provide him with adequate notice such that he had fair opportunity to defend himself.[3] In sum, the Court cannot conclude that the state trial court's decision to allow the revision of the indictment violated Petitioner's right to due process under the Fourteenth Amendment.

Petitioner's second argument is foreclosed by the Seventh Circuit's decision in *Ashburn v. Korte*, 761 F.3d 741 (7th Cir. 2014). In *Ashburn*, the petitioner argued that his due process rights were violated when the state trial court instructed the jury that he could be convicted of murder based on an accountability theory. *Id.* at 758. Like Petitioner here, Ashburn argued that "because the indictment did not charge him based on an accountability theory, it violated his due process rights to instruct the jury on accountability." *Id.* Because states need not charge a defendant by grand jury indictment, the Seventh Circuit considered the question under general due process standards—*i.e.*, whether he had sufficient notice of the charge such that he had a fair opportunity to defendant himself. *Id.* (citations omitted). In rejecting the petitioner's argument, the court of appeals explained as follows:

> Ashburn had more than adequate notice of the charges against him. The indictment charged him with shooting and stabbing Muckenstrum. Under well-established

---

[3] Additionally, even if Petitioner had sought to argue that the state court erred in holding that the means of death is not an element of the offense of murder as a matter of Illinois law, that claim is not cognizable before this court. See *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *Curtis v. Montgomery*, 552 F.3d 578, 582 (7th Cir. 2009) (explaining that a habeas petitioner may not "use a petition for a writ of habeas corpus to press his preferred interpretation of Illinois law").

> Illinois law, "a person charged as a principal can be convicted upon evidence showing that he was in fact only an aider or abetter." *People v. Doss*, 426 N.E.2d 324, 327 (1981). That is "because accountability is not a separate offense but merely an alternative manner of proving a defendant guilty of the substantive offense." *Id.* Accordingly, Ashburn was on notice that he could be convicted of murder either as a principal or based on an accountability theory and his due process rights were not violated.

*Id.* at 758.

As in *Ashburn*, Petitioner here argues that he was "convicted of uncharged offenses" because the indictment did not include a specific charge under an accountability theory. [1, at 6.] However, as just explained, prosecutors need not include an accountability theory in an indictment to request that the trial court judge read an accountability instruction to the jury. Here, Defendant was charged with Williams' murder, putting him on notice that the State could seek to convict him based on an accountability theory. Thus, the state trial court's instruction was not in error, much less violative of Petitioner's due process rights.

Finally, given that both due process claims are foreclosed by binding Seventh Circuit precedent, neither trial nor appellate counsel could have been ineffective for failing to raise them. See *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013) ("Counsel is not ineffective for failing to raise meritless claims."). In sum, Petitioner's conviction for murder on an accountability theory on a charge that did not include the means of death did not violate due process, and his trial and appellate counsel did not provide ineffective assistance of counsel by refusing to raise either of the arguments above before the trial and appellate courts.

### B. Remaining Ineffective Assistance of Counsel Claims

With those four claims resolved, the Court turns to Petitioner's three remaining claims: (1) that his trial counsel was ineffective by seeking a directed verdict on the sexual assault charges as well as the murder charges; (2) that his trial counsel was ineffective by failing to argue that

9

petitioner was not the principal in the murder; and (3) appellate counsel was ineffective for failing to raise the previous two claims.

Petitioner asserts his trial counsel's motion for a directed verdict on both the sexual assault and murder counts "played a direct part in the court denying the motion." [1, at 8.] In essence, Petitioner argues that if his trial counsel had only moved for directed verdict on the murder counts, the Court would have been more likely to grant his motion. However, as the Illinois Appellate Court noted on direct appeal, there was "overwhelming evidence that [Petitioner] was an active participant in the criminal scheme hatched by [ ] Deton to kidnap and hold [ ] Williams, steal money from his house, then kill him." *White*, 2013 IL App (1st) 112924-U, ¶¶ 27, 31. Based on the evidence before it, "the jury could have reasonably inferred that [Deton] was holding [Williams] alive at the time of the burglary/home invasion, then killed him once he confirmed that the money had been successfully stolen." *Id.* ¶ 31. Given the Appellate Court's conclusion on direct appeal that a reasonable jury could have found Petitioner guilty, the Circuit Court could not have granted Petitioner's motion for a directed verdict as a matter of law. See, e.g., *People v. Connolly*, 751 N.E.2d 1219 (Ill. App. Ct. 2001) (a motion for a directed verdict of not guilty asks whether the State's evidence *could support* a verdict of guilty beyond a reasonable doubt, not whether the evidence *does in fact support* that verdict) (emphasis in original). Thus, even if the Court could conclude—which it cannot—that Petitioner's counsel was deficient in moving for a directed verdict of not guilty on the sexual assault charges, the error was harmless because the trial court could not have granted a directed verdict.

The same is true for Petitioner's argument that trial counsel was ineffective by "failing to bring to the court's attention that * * * [Deton] was actually the person who kidnapped, unlawfully restrained, and strangled [Williams]." [1, at 8.] Again, the Appellate Court concluded on direct

10

appeal that a reasonable jury could have found Petitioner guilty on a theory of accountability—*i.e.*, that Petitioner could be held responsible for William's murder by virtue of his involvement in the conspiracy. In fact, the Appellate Court described the evidence of that fact as "overwhelming." Petitioner's trial counsel cannot have been ineffective for failing to make this argument to the Circuit Court.

Finally, given the futility of each of the above arguments, appellate counsel was likewise blameless for failing to raise these claims on direct appeal. *Warren*, 712 F.3d at 1104. Consequently, the Court must deny Petitioner's habeas petition.

## IV. Certificate of Appealability

A habeas petitioner does not have an absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. See *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003); *Sandoval v. United States*, 574 F.3d 847, 852 (7th Cir. 2009). A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *Miller-El*, 537 U.S. at 336. Under this standard, Petitioner must demonstrate that reasonable jurists would find the Court's assessment of his Section 2254 claims debatable or wrong. *Id.*; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In view of the analysis set forth above, the Court concludes that Petitioner has not made a substantial showing that reasonable jurists would differ regarding the merits of his claim and declines to issue a certificate of appealability.

## V. Conclusion

For the reasons explained above, the Court denies Petitioner's application for a writ of habeas corpus under 28 U.S.C. § 2254. The Court further declines to certify any issues for appeal

under 28 U.S.C. § 2253(c)(2). The Clerk is instructed to enter a judgment in favor of Respondent and against Petitioner. Civil case terminated.

Dated: April 23, 2019

_____
Robert M. Dow, Jr.
United States District Judge